UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

——————————————————————— x

BUILDING TRADES UNITED PENSION
TRUST FUND, on Behalf of Itself and All
Others Similarly Situated,

                Plaintiff,

      vs.

ENERGY*SOLUTIONS*, INC., R STEVE
CREAMER, PHILIP O. STRAWBRIDGE,
JEAN I. EVEREST, II, MARK C. MCBRIDE,
ALAN E. GOLDBERG, JORDAN W.
CLEMENTS, LANCE L. HIRT, ROBERT D.
LINDSAY, E. GAIL DE PLANQUE,
ROBERT J.S. RORISTON, ANDREW S.
WEINBERG, DAVID B. WINDER, CREDIT
SUISSE SECURITIES (USA) LLC, J.P.
MORGAN SECURITIES INC., MORGAN
STANLEY & CO. INCORPORATED, and
ENV HOLDINGS, LLC,

             Defendants.

——————————————————————— x

Civil Action No. **'09 CIV 8648**

CLASS ACTION COMPLAINT
FOR VIOLATIONS OF FEDERAL
SECURITIES LAWS

DEMAND FOR JURY TRIAL

U.S. DISTRICT COURT
FILED
OCT 12 2009
S.D. OF N.Y.

Plaintiff makes the following allegations, except as to allegations specifically pertaining to Plaintiff and Plaintiff's counsel, based upon the investigation undertaken by Plaintiff's counsel, which investigation included analysis of publicly available news articles and reports, public filings, securities analysts' reports and advisories about Energy*Solutions*, Inc. ("Energy*Solutions*" or the "Company"), press releases and other public statements issued by the Company, and media reports about the Company and believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons or entities, other than Defendants, who acquired the common stock or depository shares of Energy*Solutions* in or traceable to the Company's initial public offering on or about November 14, 2007 (the "IPO") and the Company's offering of securities on or about July 24, 2008 (the "July 2008 Offering") (collectively, the "Offerings"), as well as purchasers of the Company's common stock or depository shares between November 14, 2007 and October 14, 2008, inclusive (the "Class Period"), under Sections 11, 12(a)(2) and 15 of the Securities Act of 1933 ("Securities Act") and Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA") and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to Sections 11, 12(a)(2) and 15 of the Securities Act [15 U.S.C. §§77k, 77l(a)(2) and 77o], Sections 10(b) and 20(a) of the Exchange Act [15 U.S.C. §§78j(b) and 78t(a)] and Rule 10b-5 promulgated thereunder [17 C.F.R. §240.10b-5].

3.     This Court has jurisdiction over this action pursuant to Section 22 of the Securities Act [15 U.S.C. §77v], Section 27 of the Exchange Act [15 U.S.C. §78aa], and 28 U.S.C. §§1331 and 1337.

4.     Venue is properly laid in this District pursuant to Section 22 of the Securities Act, Section 27 of the Exchange Act and 28 U.S.C. §1391(b) and (c). The acts and conduct complained of herein occurred in substantial part in this District, and the IPO and the July 2008 Offering were marketed in this District.

5.     In connection with the acts and conduct alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including the mails and telephonic communications and the facilities of the New York Stock Exchange ("NYSE").

## PARTIES

6.     Plaintiff Building Trades United Pension Trust Fund acquired the common stock of Energy*Solutions* as set forth in the certification attached hereto and incorporated by reference herein, pursuant and/or traceable to the July 2008 Offering, and was damaged thereby.

7.     Defendant Energy*Solutions* is a provider of specialized, technology-based nuclear services to government and commercial customers.

8.     Defendant R. Steve Creamer ("Creamer") is Chairman of the Board and Chief Executive Officer ("CEO") of Energy*Solutions*. Defendant Creamer signed or authorized the signing of the IPO Registration Statement (defined below) and the July 2008 Offering Registration Statement (defined below).

9.     Defendant Philip O. Strawbridge ("Strawbridge") is Executive Vice President and Chief Financial Officer ("CFO") of Energy*Solutions*. Defendant Strawbridge signed or authorized the signing of the IPO Registration Statement and the July 2008 Offering Registration Statement.

- 2 -

10. Defendant Jean I. Everest, II ("Everest") has served as Vice Chairman and a member of the Board of Directors of Energy*Solutions* since July 2007. Previously, Everest served as Executive Vice President and CFO of the Company from 2005 until August 2007. Defendant Everest signed or authorized the signing of the IPO Registration Statement and the July 2008 Offering Registration Statement.

11. Defendant Mark C. McBride ("McBride") was Senior Vice President and Corporate Controller of Energy*Solutions*. Defendant McBride signed or authorized the signing of the IPO Registration Statement.

12. Defendant David B. Winder ("Winder") has been a director of Energy*Solutions* since November 2007. Winder signed or authorized the signing of the July 2008 Offering Registration Statement.

13. Defendant Alan E. Goldberg ("Goldberg") was a director of Energy*Solutions* from 2005 until his resignation on October 1, 2008. Defendant Goldberg signed or authorized the signing of the IPO Registration Statement and the July 2008 Offering Registration Statement.

14. Defendant Lance L. Hirt ("Hirt") has been a director of Energy*Solutions* since 2005, and served as Chairman of the Board until November 2007. Defendant Hirt signed or authorized the signing of the IPO Registration Statement and the July 2008 Offering Registration Statement.

15. Defendant Jordan W. Clements ("Clements") has been a director of Energy*Solutions* since 2005. Defendant Clements signed or authorized the signing of the IPO Registration Statement and the July 2008 Offering Registration Statement.

16. Defendant Robert D. Lindsay ("Lindsay") has been a director of Energy*Solutions* since 2005. Defendant Lindsay signed or authorized the signing of the IPO Registration Statement and the July 2008 Offering Registration Statement.

17.    Defendant Robert J.S. Roriston ("Roriston") was a director of Energy*Solutions* from November 2007 until his resignation from the Company on October 1, 2008. Defendant Roriston signed or authorized the signing of the July 2008 Offering Registration Statement.

18.    Defendant E. Gail de Planque ("de Planque") has been a director of Energy*Solutions* since November 2007. Defendant de Planque signed or authorized the signing of the July 2008 Offering Registration Statement.

19.    Defendant Andrew S. Weinberg ("Weinberg") has been a director of Energy*Solutions* since 2005. Weinberg signed or authorized the signing of the IPO Registration Statement and the July 2008 Offering Registration Statement.

20.    The Defendants referenced above in ¶¶8-19 are referred to herein as the "Individual Defendants."

21.    Defendant Credit Suisse Securities (USA) LLC ("Credit Suisse") operates as an investment bank in the United States with its principal executive offices located in New York, NY. Credit Suisse acted as a lead underwriter and served as a representative for the underwriters for the IPO and the July 2008 Offering and helped to draft and disseminate the Prospectuses for the two offerings.

22.    Defendant J.P. Morgan Securities Inc. ("JP Morgan") operates as an investment bank and financial service firm with its principal executive offices located in New York, NY. JP Morgan acted as a lead underwriter and served as a representative for the underwriters for the IPO and the July 2008 Offering and helped to draft and disseminate the Prospectuses for the two offerings.

23.    Defendant Morgan Stanley & Co. Incorporated ("Morgan Stanley") is a global financial services firm and underwriter with its principal executive offices and world headquarters located in New York, NY. Morgan Stanley acted as a lead underwriter and served as a

representative for the underwriters for the IPO, served as an underwriter for the July 2008 Offering, and helped to draft and disseminate the Prospectuses for the two offerings.

24.    The other underwriters for the IPO and the July 2008 Offering include, UBS Securities LLC, Citigroup Global Markets Inc., Banc of America Securities LLC, UBS Securities LLC, D.A. Davidson & Co., Lazard Capital Markets LLC, Friedman, Billings, Ramsey Group Inc., Piper Jaffray & Co., and Wedbush Morgan Securities Inc.

25.    The Defendants referenced above in ¶¶21-23 are referred to herein as the "Underwriter Defendants." The Underwriter Defendants and the entities referenced in ¶24 are collectively referred to herein as the Underwriters. The Underwriters drafted and disseminated the IPO and were paid over *$41.4 million*, and in the July 2008 Offering the Underwriter Defendants were paid over *$28.2 million* in gross fees in connection therewith. The Underwriter Defendants failed to perform adequate due diligence in connection with their role as underwriters for the IPO and the July 2008 Offering and were negligent in failing to ensure that the Registration Statement and Prospectus for the Offerings were prepared properly and accurately. The Underwriter Defendants' failure to conduct an adequate due diligence investigation was a substantial factor leading to the harm complained of herein.

26.    Defendant ENV Holdings, LLC ("ENV Holdings") owned 100% of Energy*Solutions* prior to the IPO, sold shares of Energy*Solutions* to investors in the IPO, and sold 100% of the shares to investors in the July 2008 Offering.

## CLASS ACTION ALLEGATIONS

27.    Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of a class consisting of all persons or entities who acquired the common stock or depository shares of Energy*Solutions* in or traceable to the Company's Offerings, as well as purchasers of the Company's common stock or depository shares between

- 5 -

November 14, 2007 and October 14, 2008, inclusive. Excluded from the Class are Defendants herein, members of the immediate family of each of the Defendants, any person, firm, trust, corporation, officer, director or other individual or entity in which any Defendant has a controlling interest, or which is related to or affiliated with any of the Defendants, and the legal representatives, agents, affiliates, heirs, successors-in-interest or assigns of any such excluded party.

28.    The members of the Class are so numerous that joinder of all members is impracticable. Energy*Solutions* stock is actively traded on the NYSE. Energy*Solutions* sold more than 30 million shares in the IPO and more than 35 million shares in the July 2008 Offering. The precise number of Class members is unknown to Plaintiff at this time but is believed to be in the thousands. In addition, the names and addresses of the Class members can be ascertained from the books and records of Energy*Solutions* or its transfer agent or the underwriters to the Offering. Notice can be provided to such record owners by a combination of published notice and first-class mail, using techniques and a form of notice similar to those customarily used in class actions arising under the federal securities laws.

29.    Plaintiff will fairly and adequately represent and protect the interests of the members of the Class. Plaintiff has retained competent counsel experienced in class action litigation under the federal securities laws to further ensure such protection and intends to prosecute this action vigorously.

30.    Plaintiff's claims are typical of the claims of the other members of the Class because Plaintiff's and all the class members' damages arise from and were caused by the same false and misleading representations and omissions made by or chargeable to Defendants. Plaintiff does not have any interests antagonistic to, or in conflict with, the Class.

31.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it virtually impossible for the class members to seek redress for the wrongful conduct alleged. Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.

32.     Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class. Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by defendants' acts as alleged herein;

(b)     whether the Prospectus and Registration Statements issued by defendants to the investing public in connection with the IPO and the July 2008 Offering negligently omitted and/or misrepresented material facts about Energy*Solutions* and its business; and

(c)     the extent of injuries sustained by members of the Class and the appropriate measure of damages.

## SUBSTANTIVE ALLEGATIONS

### Energy*Solutions* and the Offerings

33.     Energy*Solutions* is a provider of specialized, technology-based nuclear services to government and commercial customers. The Company's range of nuclear services includes engineering, in-plant operations, outsourced specialty services, spent nuclear fuel management, D&D, logistics, transportation, processing and disposal. It also owns and operates facilities that complement its services. The Company derives almost all of its revenues from the provision of

nuclear services. Its government customers include the United States Departments of Energy and Defense, and the United Kingdom Nuclear Decommissioning Authority.

34.     On or about March 29, 2007, Energy*Solutions* filed a Form S-1 Registration Statement with the Securities and Exchange Commission ("SEC") and filed 8 amendments to the Registration Statement on Form S-1/A thereafter for the IPO (the "IPO Registration Statement").

35.     On or about November 14, 2007, the Prospectus with respect to the IPO (the "IPO Prospectus"), which forms part of the IPO Registration Statement, became effective and 30 million depositary shares, representing 30 million shares of common stock of Energy*Solutions* at $23 per share were sold to the public, thereby raising $690 million. The 30 million shares that were sold included 11,850,000 shares of common stock sold by the Company and 18,150,000 shares of common stock sold by the selling stockholder, Defendant ENV Holdings.

36.     In addition to the above-referenced 30 million shares, the IPO included an overallotment option granted to the underwriters to purchase up to an additional 4.5 million shares of common stock and on December 7, 2007 the underwriters exercised this option for an additional 3.3 million shares. In total, 33.3 million shares were sold in the IPO at $23 per share, thereby raising approximately $765.90 million.

37.     All of the shares of common stock sold in the IPO were sold in the form of depositary shares. Each depositary share represents an ownership interest in one share of common stock. On December 19, 2007, each holder of the depositary shares was credited with a number of shares of common stock equal to the number of depositary shares held by such holder on that date, and the depositary shares were cancelled. Until the cancellation of the depositary shares on December 19, 2007, holders of the depositary shares were entitled to all proportional rights and preferences of the shares of common stock.

38.     On or about July 7, 2008, Energy*Solutions* filed a Form S-1 Registration Statement with the SEC and filed 2 amendments to the Registration Statement on Form S-1/A thereafter for the July 2008 Offering (the "July 2008 Offering Registration Statement").

39.     On or about July 24, 2008, the Prospectus with respect to the July 2008 Offering (the "July 2008 Offering Prospectus"), which forms part of the July 2008 Registration Statement, became effective and 35 million shares of common stock of Energy*Solutions* at $19 per share were sold to the public, thereby raising $665 million. All of the shares of common stock sold in the July 2008 Offering were sold by the selling stockholder, ENV Holdings.

40.     In addition to the above-referenced 35 million shares, the July 2008 Offering included an overallotment option granted to the underwriters to purchase up to an additional 5.25 million shares of common stock and the underwriters fully exercised this option on August 24, 2008. In total, 40.25 million shares were sold in the July 2008 Offering at $19 per share, thereby raising approximately $764.75 million.

41.     Prior to the IPO, ENV Holdings owned 100% of the shares of Energy*Solutions*. After the IPO and prior to the July 2008 Offering, ENV Holdings owned approximately 62.3% of the Company's outstanding common stock. Following the completion of the July 2008 Offering, ENV Holdings owned approximately 16.7% of the Company's outstanding stock.

### The Registration Statements and Prospectuses Contained Inaccurate Statements of Material Fact and Omitted Material Information Required to Be Disclosed Therein

42.     The IPO Registration Statement and the July 2008 Registration Statement contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading and was not prepared in accordance with the rules and regulations governing its preparation.

43.     The IPO Registration Statement emphasized the size of the opportunities available to

Energy*Solutions* in the nuclear industry.  The IPO Prospectus stated in part:

> We believe there are significant nuclear services opportunities in the United States
> and internationally.  In the United States, the service requirements of the nuclear
> industry can be broadly classified into two main categories – Federal and
> Commercial. Federal nuclear services consist of services provided to government
> entities (primarily the U.S. Department of Energy, or DOE, and, to a lesser extent,
> the U.S. Department of Defense, or DOD) related to management and operation, or
> M&O, services, complex D&D and clean-up of radioactive materials at both
> operational and former weapons production sites. Over the past six decades, the DOE
> developed one of the largest government-owned industries in the United States,
> responsible for research, development, testing, operations and production of nuclear
> weapons and a variety of nuclear-related research programs.  The International
> Atomic Energy Agency's Berlin Conference in 2002 estimated that *the DOE will
> spend $220 billion to $300 billion over the next several decades on nuclear
> services*. Key factors that affect the federal nuclear services market today include
> stable DOE spending on nuclear programs, significant federal contracts to be
> awarded over the next several years and renewed interest in spent nuclear fuel
> recycling.
>
> Commercial nuclear services primarily consist of specialized nuclear fuel cycle
> services provided to the 104 operating nuclear reactors in the United States, as well
> as D&D services provided to the nuclear reactors that have been shut down. The
> commercial nuclear services market also includes non-utility customers such as
> hospitals, pharmaceutical companies, research laboratories, universities or research
> reactors, industrial facilities and other commercial facilities.

44.     The IPO Prospectus also stressed the Company's advantages in securing lucrative

opportunities:

> **Our Business Strategy**
>
> Our objective is to be a leading provider of specialized, technology-based nuclear
> services worldwide by capitalizing on significant near- and long-term growth
> opportunities in the nuclear services industry. We intend to pursue this objective
> through the following strategies:
>
>> • *Focus on Decommissioning of Shut-down U.S. Reactors*. We are
>> actively marketing our D&D services for shut-down reactors to
>> nuclear power and utility companies. There are currently 13 nuclear
>> reactors in the United States in various stages of shut-down, including
>> SAFSTOR (an acronym for "safe storage" whereby nuclear facilities
>> are maintained and monitored in a condition that allows radioactivity
>> to decay over a period of several decades before undergoing final

- 10 -

D&D), with total dedicated decommissioning funds of more than $2.9 billion. Our unique license stewardship initiative for shut-down reactors allows us to potentially accelerate D&D activities by several years. Under a license stewardship, we would obtain our own Nuclear Regulatory Commission, or NRC, license for a reactor site and enter into a turn-key contract with a utility through which we would acquire the plant. We then would be compensated for the work performed from the decommissioning trust funds transferred from the existing owner. After we have completed the D&D of the plant, we would return the restored site to its original owner. This approach offers our customers cost certainty and the advantage of near-term site restoration. We believe that we are well-positioned to compete for this D&D outsourcing work because our integrated service platform, together with our on-site D&D experience, enables us to efficiently and cost-effectively complete decommissioning and disposal of the radioactive materials at these shut-down sites.

• *Pursue Prime Contracting Opportunities*. We estimate that approximately $54.7 billion of U.S. government nuclear services contracts will be awarded within the next five years, and we expect to bid on a significant portion of these contracts. We believe that we have the expertise and have achieved the scale to be a leading member of consortia pursuing prime contract opportunities. For example, in the United Kingdom, we are currently a prime contractor for the NDA. In addition, much of the near-term prime contracting work will involve expertise in complex D&D and handling highly radioactive materials, areas in which we have substantial technological capabilities and operational experience. We currently have significant staff presence at the Hanford, Oak Ridge and Savannah River DOE sites, which are three of the most heavily contaminated DOE sites requiring significant clean-up.

*Expand International Operations in Selected Markets*. We believe there are substantial near-term opportunities for us to market our nuclear services to international commercial and government customers. For example, the United Kingdom recently formed the NDA and is pursuing a £64 billion program to remediate its major nuclear sites. Our acquisitions of RSMC, a reactor operator and manager of sites at various stages of decommissioning, and Safeguard International Solutions Ltd., a leading provider of LLRW handling and disposition services in the United Kingdom, enable us to pursue opportunities in the United Kingdom and other European countries, including the provision of specialized decommissioning and disposal services. We will also target the nuclear new-build program in the United Kingdom, particularly in respect of licensing, commissioning and operations.

*    *    *

- 11 -

• *Pursue Acquisitions Opportunistically.* We intend to complement our organic growth strategy through selective acquisitions of other nuclear services businesses, both domestic and international, that enhance our existing portfolio of services and strengthen our relationships with our government and commercial customers. For example, in January 2007 we acquired Parallax, Inc., or Parallax, a Maryland-based nuclear services company, which, together with its joint venture partner, was recently awarded a contract to perform nuclear services at the DOE's Portsmouth Gaseous Diffusion Plant in Piketon, Ohio. In June 2007, we acquired RSMC from BNFL. Through its subsidiary Magnox Electric Ltd., RSMC holds the contracts and licenses to operate and decommission 22 reactors at 10 sites in the United Kingdom on behalf of the NDA. Also, we recently acquired NUKEM Corporation, or NUKEM, a provider of specialized technology-based solutions to the North American and South Korean nuclear industries for processing radioactive liquids.

45.     The IPO Prospectus purported to warn of risks to the Company, including risks in

connection with the Company's license stewardship arrangements:

*We may not be successful in entering into license stewardship arrangements with owners and operators of shut-down nuclear reactors.*

\*     \*     \*

We are marketing our license stewardship solution to the owners and operators of shut-down nuclear reactors in SAFSTOR or monitored storage. We are negotiating an arrangement with Exelon Corporation to take license stewardship of the Zion Station nuclear power plant in Zion, Illinois, for early decommissioning. Although we believe that our license stewardship initiative is an attractive alternative to deferring decommissioning and related risks to the reactor owner, including future cost increases and the future availability of disposal capacity, the following factors may adversely affect our license stewardship initiative:

\*     \*     \*

• uncertainty regarding the appropriate tax and regulatory treatment of aspects of our license stewardship initiative may prevent owners and operators of nuclear power plants from entering into these kinds of arrangements with us;

• if a plant's decommissioning trust fund has decreased or failed to grow, the fund may not be large enough to make license stewardship economically feasible;

- 12 -

• we may fail to obtain the necessary approvals and licenses from the NRC and the applicable state public utility commission on terms we find acceptable;

• as the owner of the reactor assets and the holder of the NRC license, we may be subject to unforeseen environmental liabilities, including fines for non-compliance with environmental requirements and costs associated with the clean-up of unanticipated contamination; and

*       *       *

Our inability to successfully enter into the proposed license stewardship arrangement with Exelon Corporation in respect of the Zion Station nuclear power plant or other similar arrangements may have an unfavorable impact on our business, financial position, results of operations and cash flows.

46.     On December 11, 2007, Energy*Solutions* issued a press release entitled

*EnergySolutions, Inc. and Exelon Corp Reach Agreement on Accelerated Cleanup of Zion Nuclear*

*Power Station*, which stated in part:

Energy*Solutions*, Inc., signed an agreement today with Exelon Corporation to accelerate the decommissioning and environmental restoration of the Zion Nuclear Power Station site located in Zion, Illinois.    Pending Nuclear Regulatory Commission (NRC) approval, Energy*Solutions*, Inc. expects to take possession of the facility in 2008 to begin decommissioning.

"This project launches our license stewardship strategy whereby we conduct decommissioning and site restoration work as both owner and licensee," said Steve Creamer, CEO of Energy*Solutions*.  "Under this program we will utilize the unique capabilities and facilities of Energy*Solutions* to reduce project schedules, increase the efficiencies of the decommissioning process and better control project costs."

The decommissioning of the Zion Nuclear Power Station will be substantially accelerated under this agreement.  When the decommissioning work is completed and independently verified by the Nuclear Regulatory Commission, hundreds of acres of lakefront property will be available for other uses.  The decommissioning will be performed using state-of-the-art technology and rigorous environmental controls to protect human health and the environment and to preserve the lakefront and wetlands properties.

"We will utilize our extensive technical expertise and experience in decommissioning nuclear plants to successfully clean up this site years ahead of schedule," said John Christian, President of Commercial Services at Energy*Solutions*, Inc. "We are committed to conducting the decommissioning in a manner that protects citizens, workers and the environment," added Christian.

- 13 -

47.    The July 2008 Offering Registration Statement emphasized the size of the opportunities available to Energy*Solutions* in the nuclear industry.    The July 2008 Offering Prospectus stated in pertinent part:

> We believe there are significant nuclear services opportunities in the United States and internationally. In the United States, the service requirements of the nuclear industry can be broadly classified into two main categories – Federal and Commercial. Federal nuclear services consist of services provided to government entities (primarily the U.S. Department of Energy, or DOE, and, to a lesser extent, the U.S. Department of Defense, or DOD) related to management and operation, or M&O, services, complex D&D and clean-up of radioactive materials at both operational and former weapons production sites. Over the past six decades, the DOE developed one of the largest government-owned industries in the United States, responsible for research, development, testing, operations and production of nuclear weapons and a variety of nuclear-related research programs. Key factors that affect the federal nuclear services market today include stable DOE spending on nuclear programs, significant federal contracts to be awarded over the next several years and renewed interest in spent nuclear fuel recycling.
>
> Commercial nuclear services primarily consist of specialized nuclear fuel cycle services provided to the 104 operating nuclear reactors in the United States, as well as D&D services provided to the nuclear reactors that have been shut down. The commercial nuclear services market also includes non-utility customers such as hospitals, pharmaceutical companies, research laboratories, universities and industrial facilities. Key factors that affect the U.S. commercial nuclear services market today include the outsourcing of specialized nuclear services by nuclear power plants, growth in relicensing of existing plants, significant need for fully-integrated D&D services for the commercial nuclear power plants that have been shut down and, ultimately, for the 104 operating reactors and any new reactors, and a growing interest in nuclear energy as a clean, reliable and cost-effective alternative to fossil fuels.
>
> There are also significant nuclear services opportunities associated with the existing and growing number of nuclear power reactors around the world, with approximately 36 new reactors currently under construction and another 93 are expected to be in operation during the next eight years. In addition, there are nuclear services requirements related to the management and clean-up of former weapons production and other nuclear programs in countries with significant nuclear facilities. For example, the United Kingdom has begun to remediate a portion of its nuclear power plant fleet and its former nuclear weapons production sites using a similar process to that used by the DOE. Under the United Kingdom's Energy Act 2004, the NDA was mandated with cleaning up 20 sites, including 39 reactors and five spent nuclear fuel recycling plants, as well as other fuel cycle and research facilities.

- 14 -

48.    The July 2008 Offering Prospectus represented the following about Energy*Solutions*'

business and operations:

> Over the next five years, we believe the DOE will award federal M&O and D&D contracts with total estimated contract values of $25.8 billion. See "Nuclear Services Industry." With our acquisition of Duratek, we believe we are qualified to pursue substantial federal contracts that we would not have been qualified to pursue prior to our Duratek acquisition. In addition, there are currently 13 nuclear reactors in the United States in various stages of shut-down with total current dedicated decommissioning funds of approximately $3.1 billion. We now are qualified to provide highly-specialized nuclear services to the owners of these nuclear reactors that we would not have been qualified to provide prior to our acquisition of Duratek.
>
> Our acquisition of Duratek also qualified us to participate in the bidding for RSMC, which we acquired in June 2007 for $184.8 million in cash, including transaction costs. RSMC, through its subsidiary Magnox Electric Ltd., holds the contracts and licenses to operate and decommission 10 nuclear sites with 22 reactors in the United Kingdom on behalf of the NDA, the government body responsible for the clean-up and decommissioning of the U.K. nuclear sites. With the acquisitions of Duratek and RSMC, we believe we are qualified to pursue significant additional contracts to clean up nuclear facilities in the United Kingdom.
>
> \*        \*        \*
>
> Revenues increased $387.6 million, or 339.4%, to $501.8 million for the three months ended March 31, 2008 from $114.2 million for the three months ended March 31, 2007. This increase was primarily the result of our acquisitions of RSMC and Nukem, the consolidation of our Isotek, LLC and UDS, LLC joint venture interests, and increased revenues in our Commercial Services segment operations.
>
> Revenues in our Federal Services segment increased $9.7 million, or 27.8%, to $44.6 million for the three months ended March 31, 2008 from $34.9 million for the three months ended March 31, 2007. This increase is primarily attributable to revenues earned from the clean up of the Atlas mill tailings near Moab, Utah during the three months ended March 31, 2008 and the consolidation of two of our joint venture interests, Isotek, LLC and UDS, LLC. The joint venture interests are now consolidated because we obtained majority voting rights for Isotek, LLC in November 2007 and for UDS, LLC in March 2008. During the three months ended March 31, 2007, income from these joint venture interests was reported using the equity method in other income, net, in our consolidated statements of operations. This increase was partially offset by decreased revenues from work we performed as a subcontractor on two contracts at the Hanford site.

49.    The July 2008 Offering Prospectus also stressed the Company's advantages in

securing lucrative opportunities:

- 15 -

Our objective is to be a leading provider of specialized, technology-based nuclear services worldwide by capitalizing on significant near- and long-term growth opportunities in the nuclear services industry. We intend to pursue this objective through the following strategies:

•        ***Focus on Decommissioning of Shut-down U.S. Reactors.*** We are actively marketing our D&D services for shut-down reactors to nuclear power and utility companies. There are currently 13 nuclear reactors in the United States in various stages of shut-down, including SAFSTOR (an acronym for "safe storage" whereby nuclear facilities are maintained and monitored in a condition that allows radioactivity to decay over a period of several decades before undergoing final D&D), with total dedicated decommissioning funds of more than $3.1 billion. Our unique license stewardship initiative for shut-down reactors allows us to potentially accelerate D&D activities by several years. Under a license stewardship, we would obtain our own Nuclear Regulatory Commission, or NRC, license for a reactor site and enter into a turn-key contract with a utility through which we would acquire the plant.    We then would be compensated for the work performed from the decommissioning trust funds transferred from the existing owner. After we have completed the D&D of the plant, we would return the restored site to its original owner. This approach offers our customers cost certainty and the advantage of near-term site restoration. We believe that we are well-positioned to compete for this D&D outsourcing work because our integrated service platform, together with our on-site D&D experience, enables us to efficiently and cost-effectively complete decommissioning and disposal of the radioactive materials at these shut-down sites. In December 2007, we entered into a license stewardship agreement with Exelon Corporation, under which we will become the licensee for Exelon's nuclear reactors in Zion, Illinois. Pursuant to this agreement and subject to NRC and other regulatory approvals, we will assume full responsibility for the decommissioning and site restoration at the Zion plant and will be compensated from the decommissioning trust fund for our work at the Zion plant.

•        ***Pursue Prime Contracting Opportunities.*** We estimate that approximately $25.8 billion of U.S. government nuclear services contracts will be awarded within the next five years, and we expect to bid on a significant portion of these contracts. We believe that we have the expertise and have that we jointly lead was selected by the DOE to store, retrieve and treat tank waste and close the tank farms at the DOE's Hanford site under a cost-reimbursable plus fee contract valued at approximately $7.1 billion over 10 years, which includes a five-year base period with options to extend the contract for up to five additional years. We have a 40% interest in this consortium and URS Corporation has a 45% interest. We also have significant staff presence at the Oak Ridge and Savannah River DOE sites, which, together with Hanford, are three of the most heavily contaminated DOE sites requiring significant clean-up. In addition, in the United Kingdom, we are currently a prime contractor for the NDA. Moreover, much of the near-term prime contracting work for the DOE and the NDA will involve expertise in complex D&D and handling highly radioactive materials, areas in which we have substantial technological capabilities and operational experience.

• ***Expand Existing Commercial Business***.  We believe that the breadth of our nuclear services, our technological expertise and our proprietary processing and disposal facilities will enable us to deepen our relationships with existing commercial customers and pursue new commercial customers.  Many of the specialized nuclear services that we offer are not core competencies of nuclear power and utility companies.  As we deepen our relationships with these companies, we believe that they will increasingly outsource these services to us. For example, we have signed life-of-plant contracts with commercial customers representing 82 of the 104 operating nuclear reactors in the United States, pursuant to which we have agreed to process and dispose of substantially all operating LLRW generated by these plants, and ultimately their D&D waste materials.  In addition, the NRC is reviewing a proposal to permit operators of nuclear reactors to access decommissioning funds for disposal of large components that have been retired from use in nuclear reactors. We believe the adoption of this proposal would be a significant opportunity for us to expand our business in our Commercial Services and LP&D segments.

• ***Expand International Operations in Selected Markets***.  We believe there are substantial near-term opportunities for us to market our nuclear services to international commercial and government customers.  For example, the United Kingdom has formed the NDA, which is pursuing a program to remediate its major nuclear sites.  Our acquisitions of RSMC, a reactor operator and manager of sites at various stages of decommissioning, and Safeguard International Solutions Ltd., a leading provider of LLRW handling and disposition services in the United Kingdom, enable us to pursue opportunities in the United Kingdom and other European countries, including the provision of specialized decommissioning and disposal services.  We will also target the nuclear new-build program in the United Kingdom, particularly in respect of licensing, commissioning and operations.

*        *        *

• ***Pursue Acquisitions Opportunistically***.  We intend to complement our organic growth strategy through selective acquisitions of other nuclear services businesses, both domestic and international, that enhance our existing portfolio of services and strengthen our relationships with our government and commercial customers.  For example, in January 2007 we acquired Parallax, Inc., a Maryland-based nuclear services company, which, together with its joint venture partner, was awarded a contract to perform nuclear services at the DOE's Portsmouth Gaseous Diffusion Plant in Piketon, Ohio.  In June 2007, we acquired RSMC from BNFL. Through its subsidiary Magnox Electric Ltd., RSMC holds the contracts and licenses to operate and decommission 22 reactors at 10 sites in the United Kingdom on behalf of the NDA.  In December 2007, we acquired Monserco Limited, a Canadian company that enhances our ability to manage projects in Canada.

50.    The July 2008 Offering Prospectus purported to warn of risks to the Company, including risks in connection with the Company's license stewardship arrangements:

- 17 -

***We may not be successful in entering into license stewardship arrangements with owners and operators of shut-down nuclear reactors.***

We are marketing our license stewardship solution to the owners and operators of shut-down nuclear reactors in SAFSTOR or monitored storage. Although we believe that our license stewardship initiative is an attractive alternative to deferring decommissioning and related risks to the reactor owner, including future cost increases and the future availability of disposal capacity, the following factors may adversely affect our license stewardship initiative:

\* \* \*

• uncertainty regarding the appropriate tax and regulatory treatment of aspects of our license stewardship initiative may prevent owners and operators of nuclear power plants from entering into these kinds of arrangements with us;

• if a plant's decommissioning trust fund has decreased or failed to grow, the fund may not be large enough to make license stewardship economically feasible;

• we may fail to obtain the necessary approvals and licenses from the NRC and the applicable state public utility commission on terms we find acceptable;

• these contracts may require us to post letters of credit or surety bonds that we may be unable to obtain on reasonable terms, or at all;

• as the owner of the reactor assets and the holder of the NRC license, we may be subject to unforeseen environmental liabilities, including fines for non-compliance with environmental requirements and costs associated with the clean-up of unanticipated contamination; and

\* \* \*

Our inability to successfully enter into license stewardship arrangements may have an unfavorable impact on our business, financial position, results of operations and cash flows.

51. The statements referenced above in ¶¶43-50 were each inaccurate statements of material fact when made because they omitted to disclose or misrepresented the following adverse facts:

(a) economic problems in the United States and internationally were adversely affecting the Company's ability to secure projects which would adversely affect its future results;

(b)     the statements in the Company's IPO Prospectus and the July 2008 Offering Prospectus about the opportunities in the nuclear industry were materially misleading because Energy*Solutions* was not well situated in the near term to benefit from those opportunities;

(c)     on May 29, 2007 and prior to the IPO, the Company filed a petition for rulemaking (the "Petition") requesting that the Nuclear Regulatory Commission ("NRC") change well-established and longstanding regulations to allow funds from licensees' decommissioning trust funds to be used for the cost of disposal of major radioactive components that have been removed from reactors before the permanent cessation of operations;

(d)     the business prospects of the Company, including the Company's license stewardship initiative, was heavily dependent upon a favorable ruling from the NRC on the Petition;

(e)     by the time of the Petition, the NRC had already addressed and rejected the issue raised by Energy*Solutions* in the Petition. The NRC has consistently distinguished between decommissioning activities, which follow plant shut down, and operational activities. For instance, in a 1996 decommissioning rulemaking, the NRC reiterated what it had indicated in its 1988 initial decommissioning rulemaking, that "allowing decommissioning trust fund withdrawals for the disposals by nuclear power plants that continue to operate is not warranted. These activities are more appropriately considered operating activities and should be financed in that way";

(f)     the Company faced significant risks that the Petition would be rejected by the NRC because the NRC has long been clear that the purpose of the decommissioning trust funds is to ensure that licensees have adequate funds on hand for decommissioning activities at the time of license expiration; and

(g)    the rule change sought by the Petition was considerably more difficult than and very different from "not obtain[ing] the necessary approvals and licenses from the NRC" and was much riskier than represented.

52.    Furthermore, under applicable SEC rules and regulations governing the preparation of the Registration Statement and Prospectus, the IPO Registration Statement and the July 2008 Offering Registration Statement were required to disclose: (i) that the negative impact of the economy and credit crisis and the obstacles in connection with the Petition were known trends, events or uncertainties that were having, and were reasonably likely to have, an impact on the Company's continuing operations; and (ii) the risks to Energy*Solutions* associated with the problems with the economy and the Petition.  The IPO Registration Statement and the July 2008 Offering Registration Statement failed to contain any such disclosures.

53.    Pursuant to Item 103, the IPO Registration Statement and Prospectus and the July 2008 Offering Registration Statement and Prospectus were required to:

> Describe briefly any material pending legal proceedings, other than ordinary routine litigation incidental to the business, to which the registrant or any of its subsidiaries is a party or of which any of their property is the subject.  Include the name of the court or agency in which the proceedings are pending, the date instituted, the principal parties thereto, a description of the factual basis alleged to underlie the proceeding and the relief sought.

54.    The IPO Prospectus stated: "Legal Proceedings . . . We are not currently involved in any material legal proceedings."  The July 2008 Offering Registration Statement under the Legal Proceedings section discussed several items but made no reference to the Petition.  Both the IPO Registration Statement and July 2008 Offering Registration Statement failed to adequately describe the Petition.  Furthermore, the statement in the IPO Prospectus that the Company was not "involved in any material legal proceedings" was false because the Petition was a material legal proceeding.

55.     Following the July 2008 Offering, the price of Energy*Solutions* stock declined in price over the next several months.

56.     On October 14, 2008, Energy*Solutions* issued a press release entitled *Accelerated Decommissioning Projects Delayed by Nation's Financial Crisis*, which stated in part:

> The financial crisis that is impacting the United States and world markets will delay Energy*Solutions*' ability to accelerate the decommissioning of identified nuclear power plant assets, a key growth initiative of the company.
>
> The company is now estimating net income in the range of $0.50 to $0.60 per share, based on 88.3 million fully diluted shares outstanding. Net income before the non-cash impact of the amortization of intangibles is estimated to be in the range of $0.70 to $0.80 per share. Amortization expense of intangible assets is expected to be $28 million, or $18 million net of related income tax expense. The company estimates EBITDA for fiscal 2008 to be in the range of $165 million to $180 million. Estimates for net income before the non-cash impact of the amortization of intangible assets and for EBITDA exclude the costs of approximately $1.8 million from the secondary offering in July 2008 and any special charges. The company anticipates that the financial performance for fiscal 2009 to be similar to 2008. Further information will be provided in the company's third quarter earnings call in November.
>
> The Nuclear Regulatory Commission (NRC), which maintains oversight for the use of decommissioning trust funds, informed Energy*Solutions* last week that it denied the company's petition for a rulemaking change that would allow the use of decommissioning trust funds for the processing and disposal of major radioactive components ("large components") that have been removed from operating nuclear reactors. The NRC indicated, however, that it would consider, on a case-by-case basis, exemptions from its guidance against using decommissioning trust funds for disposing of large components.
>
> Energy*Solutions* will continue to work with the NRC and its nuclear utility customers to seek appropriate exemptions and pursue NRC rulemaking changes. The Commission has indicated that it believes that the early removal and disposal of large components is important and it will continue to work on alternative methods to accomplish this objective. Energy*Solutions* continues to explore other innovative funding options with a number of utilities to secure the decommissioning of these large components in the near future.
>
> Energy*Solutions* and Exelon have an agreement under which Energy*Solutions* would accelerate the decommissioning of Exelon's Zion Nuclear Power Station in Zion, Illinois, which stopped operating in February 1998. The NRC approval for the transfer of the license from Exelon to the company's decommissioning subsidiary, Zion*Solutions*, is expected by mid-December.

- 21 -

However, Energy*Solutions* does not believe that it is in the best interests of its stakeholders to finalize the transfer of the Zion Nuclear Power Station assets until after the financial markets stabilize and the company reaffirms that there is sufficient value in the Zion decommissioning trust funds to ensure adequate funds for the accelerated decommissioning of the plant.    Exelon officials have informed Energy*Solutions* that they are supportive of this strategy.    Pursuant to their agreement, Energy*Solutions* and Exelon have until December 2009, to close the transaction. Energy*Solutions* remains committed to its license stewardship program.

"Despite the financial challenges that are impacting the United States and markets around the world, our base business is very solid and we continue to generate significant cash flow," said Steve Creamer, CEO and Chairman of Energy*Solutions*. "Our core customers, the governments of the United States and United Kingdom and the domestic nuclear industry, continue to require the unique services provided by Energy*Solutions*."

57.    Following the Company's October 14, 2008 announcement, the price of Energy*Solutions*' stock collapsed from $10.14 per share on October 13, 2008 to close at $5.64 per share on October 14, 2008 – a one day decline of $4.50 per share or 44% – on extremely heavy trading volume of 9.4 million shares.

## COUNT I

### Violations of Section 11 of the Securities Act
### Against All Defendants

58.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

59.    This Count is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. §77k, and is asserted against all Defendants.

60.    The Registration Statements for the IPO and the July 2008 Offering were inaccurate and misleading, contained untrue statements of material facts, omitted facts necessary to make the statements made therein not misleading, and omitted to state material facts required to be stated therein.

61.     Energy*Solutions* is the registrant for IPO and the July 2008 Offering. As issuer of the shares, Energy*Solutions* is strictly liable for the materially inaccurate statements contained in the Registration Statements and the Prospectuses and the failure of the Registration Statements and Prospectuses to be complete and accurate.

62.     The Individual Defendants each signed the Registration Statements either personally or through an Attorney-in-Fact and/or caused its issuance. The Individual Defendants each had a duty to make a reasonable and diligent investigation of the truthfulness and accuracy of the statements contained in the Registration Statements. They had a duty to ensure that such statements were true and accurate, that there were no omissions of material fact that would make the statements misleading and that the documents contained all facts required to be stated therein. In the exercise of reasonable care, the Individual Defendants should have known of the material misstatements and omissions contained in the Registration Statements and also should have known of the omissions of material fact that were necessary to make the statements made therein not misleading. As such, the Individual Defendants are liable to the Plaintiff and the Class.

63.     Defendant ENV Holdings held 100% of the Company's shares prior to the IPO and more than 67% of the Company's shares prior to the July 2008 Offering and controlled the Company and its management and caused the issuance of the IPO and July 2008 Offering Registration Statements and the statements contained therein.

64.     ENV Holdings also sold millions of shares in the IPO and July 2008 Offering. The Underwriter Defendants were each underwriters, as that term is used in Section 11(a)(5) of the Securities Act, with respect to the IPO and the July 2008 Offering and the Company's securities sold through the Registration Statements. The Underwriter Defendants were required to investigate with due diligence the representations contained therein to confirm that they did not contain materially

- 23 -

misleading statements or omit material facts. None of the Underwriter Defendants made a reasonable investigation or possessed reasonable grounds for the belief that the statements described herein, which were contained in the Registration Statements and Prospectuses, were true, were without omission of any material facts, and/or were not misleading.

65.    By reasons of the conduct herein alleged, each Defendant violated Section 11 of the Securities Act.

66.    Plaintiff Building Trades United Pension Trust Fund and putative Class members acquired Energy*Solutions* securities in the IPO and the July 2008 Offering, and in reliance on, the Registration Statements and without knowledge of the untruths and/or omissions alleged herein. Plaintiff and the Class sustained damages when the price of Energy*Solutions* securities declined substantially subsequent to and due to Defendants' violations.

## COUNT II

### Violations of Section 12(a)(2) of the Securities Act
### Against All Defendants

67.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

68.    This Count is brought pursuant to Section 12(a)(2) of the Securities Act, 15 U.S.C. §77l, on behalf of Plaintiff and the Class, against all Defendants.

69.    Defendants were sellers and offerors and/or solicitors of purchasers of the securities offered pursuant to the IPO Prospectus and the July 2008 Offering Prospectus. Defendants issued, caused to be issued, and/or signed the Registration Statements in connection with the IPO and the July 2008 Offering. The Registration Statements contained a Prospectus which was used to induce investors, such as Plaintiff and the other members of the Class, to purchase Energy*Solutions* securities.

- 24 -

70.     The Prospectus contained untrue statements of material fact, omitted to state other facts necessary to make the statements made not misleading, and omitted material facts required to be stated therein. The Individual Defendants' actions of solicitation included participating in the preparation of the false and misleading Prospectus and in "Road Shows" to promote the IPO and the July 2008 Offering. ENV Holdings, Energy*Solutions* and the Underwriter Defendants, acting through their employees, agents and others, solicited such purchases for their personal financial gain through the preparation and dissemination of the Prospectuses. Additionally, ENV Holdings sold millions of shares in the IPO and July 2008 Offering.

71.     The Underwriter Defendants participated in the preparation and dissemination of the false and misleading Prospectuses for their own financial benefit. But for their participation in the IPO and the July 2008 Offering, including their solicitation as set forth herein, those Offerings could not and would not have been accomplished. Specifically, the Underwriter Defendants:

(a)     made the decision to conduct the IPO and the July 2008 Offering and do it at the price set forth in the offering documents. The Underwriter Defendants drafted, revised and/or approved the Prospectuses. The Prospectuses were calculated to create interest in Energy*Solutions* securities and were widely distributed by or on behalf of these Defendants for that purpose;

(b)     finalized the Prospectuses and caused them to become effective; and

(c)     conceived and planned the IPO and the July 2008 Offering and orchestrated all activities necessary to affect the sale of these securities to the investing public, by issuing securities, promoting the securities and supervising their distribution and ultimate sale to the investing public.

72.     As set forth more specifically above, the Prospectuses contained untrue statements of material fact and omitted to state material facts necessary in order to make the statements, in light of circumstances in which they were made, not misleading.

73.     Plaintiff and the other Class members did not know, nor could they have known, of the untruths or omissions contained in the Prospectuses.

74.     The Defendants named in this Count were obligated to make a reasonable and diligent investigation of the statements contained in the Prospectuses to ensure that such statements were true and that there was no omission of material fact required to be stated in order to make the statements contained therein not misleading.  None of the Defendants named in this Count made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Prospectuses were accurate and complete in all material respects.  Had they done so, these Defendants would have known of the material misstatements and omissions alleged herein.

75.     By reason of the conduct alleged herein, these Defendants violated §12(a)(2) of the Securities Act.  Accordingly, Plaintiff and members of the Class who hold Energy*Solutions* securities purchased in the IPO and the July 2008 Offering have the right to rescind and recover the consideration paid for their Energy*Solutions* securities and hereby elect to rescind and tender their Energy*Solutions* securities to the Defendants sued herein.  Plaintiff and Class members who have sold their Energy*Solutions* securities are entitled to rescissory damages.

## COUNT III

### Violation of Section 15 of the Securities Act
### Against the Individual Defendants

76.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

77.     This Count is brought pursuant to Section 15 of the Securities Act against the Individual Defendants.

78.     Each of the Individual Defendants acted as controlling persons of Energy*Solutions* within the meaning of Section 15 of the Securities Act by virtue of his position as a director and/or senior officer of Energy*Solutions*.     By reason of their senior management positions and/or directorships at the Company, as alleged above, these Individual Defendants, individually and acting pursuant to a common plan, had the power to influence and exercised the same to cause Energy*Solutions* to engage in the conduct complained of herein.     By reason of such conduct, the Individual Defendants are liable pursuant to Section 15 of the Securities Act.

79.     Each of the Individual Defendants was a culpable participant in the violations of Sections 11 and 12(a)(2) of the Securities Act alleged in Counts I and II above, based on their having signed the Registration Statement and having otherwise participated in the process which allowed the Offerings to be successfully completed.

## COUNT IV

### Violation of Section 10(b) of the Exchange Act
### Against and Rule 10b-5 Promulgated Thereunder
### Against All Defendants

80.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

81.     During the Class Period, Defendants disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

82.     Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 in that they:

      (a)     employed devices, schemes, and artifices to defraud;

- 27 -

(b)    made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(c)    engaged in acts, practices, and a course of business that operated as a fraud or deceit upon Plaintiff and others similarly situated in connection with their purchases of Energy*Solutions* common stock during the Class Period.

83.    As alleged herein, Defendants acted with scienter in that Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or Documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, Defendants, by virtue of their receipt of information reflecting the true facts regarding Energy*Solutions*, their control over, and/or receipt and/or modification of Energy*Solutions*'s allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Energy*Solutions* participated in the fraudulent scheme alleged herein.

84.    Defendants also dumped hundreds of millions of dollars of their personally-held shares on unsuspecting investors while in possession of material non-public information as described herein.

85.    At all relevant times, the market for Energy*Solutions* common stock was an efficient market for the following reasons, among others:

(a)    Energy*Solutions* stock met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient and automated market;

- 28 -

(b)    as a regulated issuer, Energy*Solutions* filed periodic public reports with the SEC and the NYSE;

(c)    Energy*Solutions* regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d)    Energy*Solutions* was followed by several securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

86.    As a result of the foregoing, the market for Energy*Solutions* common stock promptly digested current information regarding Energy*Solutions* from all publicly-available sources and reflected such information in the price of Energy*Solutions* stock. Under these circumstances, all purchasers of Energy*Solutions* common stock during the Class Period suffered similar injury through their purchase of Energy*Solutions* common stock at artificially inflated prices and a presumption of reliance applies.

87.    The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, Defendants are

- 29 -

liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of Energy*Solutions* who knew that those statements were false when made.

88.    Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Energy*Solutions* stock.  Plaintiff and the Class would not have purchased Energy*Solutions* stock at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by Defendants' misleading statements.

89.    As a direct and proximate result of these Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases of Energy*Solutions* common stock during the Class Period.

## COUNT V

### Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

90.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

91.    The Individual Defendants acted as controlling persons of Energy*Solutions* within the meaning of Section 20(a) of the Exchange Act.  By reason of their positions as officers and/or directors of Energy*Solutions*, and their ownership of Energy*Solutions* stock, the Individual Defendants had the power and authority to cause Energy*Solutions* to engage in the wrongful conduct complained of herein.  Energy*Solutions* controlled each of the Individual Defendants and all of its employees.  By reason of such conduct, the Individual Defendants and Energy*Solutions* are liable pursuant to Section 20(a) of the Exchange Act.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of itself and the Class, prays for judgment as follows:

A.      declaring this action to be a class action properly maintained pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure;

B.      awarding Plaintiff and other members of the Class damages together with interest thereon;

C.      with respect to Count II, Ordering that the IPO and the July 2008 Offering be rescinded;

D.      awarding Plaintiff and other members of the Class their costs and expenses of this litigation, including reasonable attorneys' fees, accountants' fees and experts' fees and other costs and disbursements; and

E.      awarding Plaintiff and other members of the Class such other and further relief as may be just and proper under the circumstances.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED: October 12, 2009

COUGHLIN STOIA GELLER
 RUDMAN & ROBBINS LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD
EVAN J. KAUFMAN

_____
          EVAN J. KAUFMAN

58 South Service Road, Suite 200
Melville, NY  11747
Telephone: 631/367-7100
631/367-1173 (fax)

*Attorneys for Plaintiff*

## CERTIFICATION OF NAMED PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

BUILDING TRADES UNITED PENSION TRUST FUND ("Plaintiff") declares:

1.    Plaintiff has reviewed a complaint and authorized its filing.

2.    Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3.    Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.    Plaintiff has made the following transaction(s) during the Class Period in the securities that are the subject of this action:

| Security | Transaction | Date | Price Per Share |
|----------|-------------|------|-----------------|

See attached Schedule A.

5.    (a)    Plaintiff has been appointed to serve as a representative party for a class in the following actions filed under the federal securities laws during the three years prior to the date of this Certification:

*Building Trades United Pension Trust Fund v. Kenexa Corporation, et al.*, No. 2:09-cv-02642-JS (E.D. Pa.)

(b)    Plaintiff is seeking to serve as a representative party for a class in the following actions filed under the federal securities laws:

*Osborn v. Coach, Inc., et al.*, No. 09-cv-03789 (S.D.N.Y.)
*Hughes v. Huron Consulting Group Inc., et al.*, No. 1:09-cv-04734 (N.D. Ill.)

(c)    Plaintiff initially sought to serve as a representative party for a class in the following actions filed under the federal securities laws during the three years prior to the date of this Certification:

*Rubin v. MF Global, Ltd., et al.*, No. 1:08-cv-02233-VM (S.D.N.Y.)
*Public Pension Fund Group, et al. v. KV Pharmaceutical Co., et al.*, No. 4:08-cv-01859-CEJ (E.D. Mo.)
*Coad v. Sequenom, Inc., et al.*, No. 3:08-cv-00921-LAB (S.D. Cal.)

ENERGYSOLUTIONS

6.      The Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 9ᵗʰ day of October, 2009.

BUILDING TRADES UNITED PENSION
TRUST FUND

By: _____

Its: Vice Chairman

By: _____

Its: Secretary

- 2 -

ENERGYSOLUTIONS

SCHEDULE A

SECURITIES TRANSACTIONS

Acquisitions

| Date Acquired | Type/Amount of Securities Acquired | Price |
|---|---|---|
| 07/24/2008 | 26,000 | $19.00 |

Sales

| Date Sold | Type/Amount of Securities Sold | Price |
|---|---|---|
| 09/26/2008 | 3,800 | $11.91 |
| 09/29/2008 | 1,420 | $9.82 |
| 10/07/2008 | 7,620 | $8.85 |
| 10/14/2008 | 13,160 | $6.56 |